1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VEGETABLE JUICES, LLC,<br><br>                    Plaintiff,<br><br>        v.<br><br>HALIBURTON INTERNATIONAL<br>FOODS, INC.,<br><br>                    Defendant. | Case No. 5:23-cv-01639-SPG-SHK<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [ECF NO. 27]** |

Before the Court is Defendant Haliburton International Foods, Inc.'s ("Defendant") Motion to Dismiss Plaintiff Vegetable Juice's ("Plaintiff") First Amended Complaint. (ECF No. 27). Plaintiff opposed the Motion and Defendant timely replied. (ECF Nos. 36, 38). The Court heard oral argument on December 20, 2023. Having considered the parties' submissions, the relevant law, the arguments of counsel during the hearing on the Motion, and the record in this case, the Court GRANTS Defendant's Motion.

I.    **BACKGROUND**

  A.    **Factual Background**

  Plaintiff alleges as follows:

  On or about August 22, 2017, Plaintiff entered into an Asset Purchase Agreement ("Agreement") with Defendant.  Under the terms of the Agreement, Plaintiff acquired certain assets from Defendant, including but not limited to: production equipment, information regarding Defendant's production methods, customer lists and the good will associated with the business lines Plaintiff acquired ("Acquired Assets").  (ECF No. 21 ("FAC") ¶ 6).  Important to this litigation, the Agreement includes a potential "Total Revenues Payment" clause.  According to the Total Revenue Payment clause, a payment would be made to Defendant "contingent upon [Defendant] reaching certain revenue targets between July 1, 2017 and the date prior to closing on the Agreement."  (FAC ¶ 8). This is referred to as the "Lookback Period".

  Under the formula set forth in the Agreement for the Total Revenues Payment, revenue from the Acquired Assets under $10,000,000 would result in no payment. Revenues between $10,000,000 and $11,999,000 would result in a $2,500,000 payment. Revenues of $12,000,000 or more during the Lookback Period would result in a payment of $5,000,000.  (FAC ¶ 9).

  According to Plaintiff, the "purpose of the Total Revenues Payments was to memorialize the real value of the Acquired Assets and to reward [Defendant] for maintaining ties with and transferring its relationships with its customers to [Plaintiff]." (FAC ¶ 10).  Meeting this purpose required that all revenue from the Acquired Assets accrued during the Lookback Period be from "saleable product." (FAC ¶ 11).

  "Through the first ten months of the Lookback Period, it appeared that [Defendant] may not achieve sales sufficient to trigger a Total Revenues Payment. Reported sales as of the end of April 2018 totaled $9,190,975[.]"   (FAC ¶ 11).   Despite the shortfall, Defendant's then corporate president and CEO, Ian Schenkel, wrote to Thibant Pinchon – a representative of Plaintiff – that "[w]e have built millions of dollars of inventory for you,

certainly well beyond the $12 million number…" (FAC ¶ 12). Plaintiff alleges that Schenkel went on to "threaten" that "if we are going to continue to produce through June [the last month of the Lookback period], I want assurance that the $5 million payment will be made." (FAC ¶ 12).

In May 2018, which was the second to last month before the end of the Lookback Period, sales rose by over $200,000. In June, sales rose to $2,034,500. (FAC ¶ 13). "The increase in sales were dominated by purchase orders from a company called Fortun Foods for nearly $992,144 of product." (FAC ¶ 13). According to Plaintiff, those orders began to stream in almost simultaneously with Schenkel's message to Pinchon. With these sales (and not without), Defendant reached the 12 million threshold for the maximum Total Revenues Payment. (FAC ¶ 13).

The purchase orders placed by Fortun Foods in May and June 2018 misidentified the vendor as Naturex, the then-parent company of Plaintiff, and identified the pick-up address for purchased products as "Haliburton International Foods". (FAC ¶ 14). In conjunction with the sales to Fortun Foods, Defendant provided Plaintiff with certificates of analysis ("COAs") that showed that the product ostensibly sold and shipped to Fortun Foods was within its expiration date and thus saleable. (FAC ¶ 16). Each COA featured the Haliburton logo, and each COA stated, "Haliburton International Foods, Inc. certifies that the above results comply in all aspects with the current product specifications and represent the correct analysis for the referenced lot code." (FAC ¶ 16). Plaintiff represents that Plaintiff had "no ability to determine whether product was relabeled and no basis for doubting, let alone disputing, the dates on the COAs." (FAC ¶ 16).

At the close of the Lookback Period, Plaintiff paid Defendant $2,500,000 in accordance with the standards set forth for Total Revenues Payments in the Agreement. (FAC ¶ 17).

In late December 2020, Plaintiff was served with a document subpoena by a former employee of Defendant (Richard Marasco) in an unrelated lawsuit. Through this subpoena process, Plaintiff "became aware that Marasco alleged that [Defendant], through Schenkel,

had fabricated sufficient sales necessary to trigger the Total Revenues Payment by colluding with Fortun Foods to transfer expired and out-of-date inventory in a series of sham sales." (FAC ¶ 19).

Upon learning these facts, Plaintiff started an investigation lasting "a period of more than a year." (FAC ¶ 21). This investigation disclosed that "most if not all of the sales to HIF to Fortun Foods [sic][1] were sham transactions calculated to trigger the Total Revenues Payment involving an entity that had not previously been an HIF customer, which did not in the future become a customer of VJI and which were not, in fact, genuine sales." (FAC ¶ 21). According to Plaintiff, "the fabrication of sales to induce [Plaintiff] to make a $2,500,000 Total Revenues Payment to [Defendant] violated the letter and spirit of the Agreement, misrepresented the true enterprise value of the Acquired Assets, were in conflict with Seller's Representations and Warranties contained in Article 3 of the Agreement and caused damage to [Plaintiff]." (FAC ¶ 21).

At the conclusion of Plaintiff's investigation in November 2022, Plaintiff demanded Defendant return the obtained Total Revenues Payment. Defendant has not returned the payment. (FAC ¶ 23).

**B.    Procedural Background**

Plaintiff filed its initial Complaint in this action on August 14, 2023. (ECF No. 1). On October 27, 2023, Plaintiff filed its first amended complaint. (ECF No. 21). On November 13, 2023, Defendant filed the instant Motion to Dismiss Plaintiff's First Amended Complaint ("Motion"). Plaintiff opposed the Motion and Defendant timely replied. (ECF Nos. 36, 38).

**II.    LEGAL STANDARD**

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of

---

[1]Given the context, the Court interprets this clause to mean that "most if not all of the sales to *Fortun Foods* from *HIF*…"

Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). To survive a 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. (internal citation omitted). When ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, the Court is not "required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Seven Arts Filmed Ent., Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (citing *Daniels–Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010)). Furthermore, where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects of the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (internal citation omitted).

## III.   DISCUSSION

In the instant Motion, Defendant argues for dismissal of all of Plaintiff's claims stated in the FAC. First, Defendant argues that each of Plaintiff's fraud-based claims fail to satisfy Rule 9's heightened pleading requirements. Second, Defendant argues that each of Plaintiff's claims are time-barred. Third, Defendant argues that Plaintiff's suit is brought in the wrong forum. And fourth, Defendant argues that Plaintiff's bad faith claim fails

because it is contradicted by the express terms of the Asset Purchase Agreement.   The
Court examines each of Defendant's arguments in turn.

### A.    Plaintiff's Fraud Claims

Federal Rule 9(b) requires a plaintiff to "state with particularity the circumstances
constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  The complaint must set forth "the
time, place, and specific content of the false representations as well as the identities of the
parties to the misrepresentation."  *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir.
2007).  Rule 9(b) also applies to claims that are "grounded in fraud" or "sound in fraud."
*Vess v. Ciba-Geigy Corp., U.S.A.*, 317 F.3d 1097, 1103–04 (9th Cir. 2003).  Defendant
argues that the "who, what, when, where, and how of the alleged collusion between HIF
(other than 'through' Ian Schenkel, then the President and CEO of HIF) and Fortun Foods"
are "[g]laringly missing from the FAC[.]"  (ECF No. 27-1 at 17).  In opposition, Plaintiff
states that the FAC pleads its fraud claims with sufficient particularity.  (ECF No. 33 at 8-
12).

Rule 9(b) requires that the dates of fraudulent misconduct be alleged with specificity.
*See Pegasus Trucking, LLC v. Asset Redeployment Grp., Inc.*, 2021 WL 1234879, at *15
(C.D. Cal. Feb. 16, 2021) ("Plaintiffs state the transaction… commenced in late December
2018 or early January 2019… but Plaintiffs do not allege specific instances on specific
dates where the purported promises were made.").  General allegations of the month and
year in which the purported fraudulent misconduct occurred do not suffice.  *See Glen Holly
Entm't, Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1094 (C.D. Cal. 1999) ("[A]llegations
such as 'during the course of discussions in 1986 and 1978,' and 'in or about May through
December 1987' do not make the grade under Rule 9(b).") (internal citation omitted).
Here, Plaintiff alleges that Defendant's fraud happened "in May and June 2018."  (ECF
No. 33 at 9).  Because merely alleging the month and year "do[es] not make the grade
under Rule 9(b)," Plaintiff's fraud claims do not meet Rule 9(b)'s standard.

Moreover, "[a] pleading is sufficient under Rule 9(b) if it identifies the
circumstances constituting fraud so that a defendant can prepare an adequate answer to the

allegations." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) (citation omitted).   Broad allegations lacking particularized supporting detail are insufficient.   *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001).   Here, Plaintiff's allegations lack particularized supporting detail.   Plaintiff broadly claims that Plaintiff's investigation disclosed that "most if not all of the sales to HIF to Fortun Foods [sic] were sham transactions calculated to trigger the Total Revenues Payment involving an entity that had not previously been an HIF customer, which did not in the future become a customer of VJI and which were not, in fact, genuine sales." (FAC ¶ 21).   Defendant does not detail how this alleged fraud occurred or the particular circumstances constituting the fraud on a particular occasion.   As such, Plaintiff's fraud claims fail to satisfy Rule 9(b).

### B.     Statute of Limitations

The statute of limitations for Plaintiff's fraud claim is three years, though "the cause of action in that case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." Cal. Civ. Proc. Code § 338(d).   The statute of limitations for Plaintiff's bad faith claim, to the extent that it is contract-based, is four years.   Cal. Civ. Proc. Code § 337.   The statute of limitations for Plaintiff's Section 17200 claim is four years. Cal. Bus. & Prof. Code § 17208.   Defendant argues that each of Plaintiff's claims is premised on the same alleged fraud, which occurred in or around May-June 2018.   According to Defendant, Plaintiff had until June 2021 to bring its fraud claim, and until June 2022 to bring its bad faith and Section 17200 claims.   Since this action was filed in August 2023, Defendant argues that Plaintiff's action is time-barred.   (ECF No. 29-1 at 19).   Moreover, Defendant argues that the discovery rule does not apply in this case to toll accrual of Plaintiff's claims because the circumstances surrounding the sales to Fortun Foods "most certainly would have caused any reasonable person to immediately commence an investigation to ascertain whether those sales were in fact legitimate."   (ECF No. 29-1 at 20).

In California, the discovery rule postpones accrual of a claim until "the plaintiff discovers, or has reason to discover, the cause of action." *Norgart v. Upjohn Co.,* 21 Cal. 4th 383, 397, 87 Cal. Rptr. 2d 453, 981 P.2d 79 (Cal. 1999).  California applies a special standard in cases of fraudulent concealment, which Plaintiff seems to be claiming here.  In these cases, the plaintiff must show: "(1) when the fraud was discovered; (2) the circumstances under which it was discovered; and (3) that the plaintiff was not at fault for failing to discover it or had no actual or presumptive knowledge of facts sufficient to put him on inquiry." *Baker v. Beech Aircraft Corp.*, 39 Cal. App. 3d 315, 321, 114 Cal. Rptr. 171 (1974).

Here, the Court is not satisfied that Plaintiff has alleged facts that, if true, show that plaintiff was not at fault for failing to discover it had no actual or presumptive knowledge of facts sufficient to put it on inquiry.  Plaintiff merely alleges that it had "no reason to doubt the veracity of [Defendant's] representations." (FAC ¶ 17).  Like the Court's holding above, Plaintiff must plead particular facts related to the alleged fraud.  Only with those particularized facts can the Court then analyze whether Plaintiff was at fault for failing to discover the alleged fraud.  As such, the Plaintiff has failed to plead facts sufficient to trigger the discovery rule in this action.[2]

### C.    Improper Forum

Defendant next argues that ████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
(ECF No. 27-1 at 20). ██████████████████████████████████████
████████████████████████████████████████████████████████████

---

[2] As discussed at the hearing on the Motion on December 20, 2023, the Court agrees with Defense counsel that the facts constituting the alleged fraud are, as plead, opaque.  For instance, the Court is unsure how the at-issue transactions were processed and by whom.

-8-



1           (ECF No. 33 at 15); *See* (ECF No. 29-2

2 ("Exh. A") at 13).

3

4

5

6

7

8

9

10

11           (Exh. A at 12-13).  Here, the Court

12 agrees with Plaintiff that this provision, on its face, "applies to revenue calculated" and not

13 allegations of fraud.

14

15

16           (Exh. A at

17 41).  Given that this suit is related to the parties' Agreement, Plaintiff is not in an improper

18 forum for the purposes of the contract.

19         The Court also notes on its own that, insofar as the provision cited above includes

20 an arbitration agreement, "generally applicable contract defenses, such as fraud, duress, or

21 unconscionability, may be applied…." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1268

22 (9th Cir. 2006).

23        **D.**    **Bad Faith**

24         Defendant argues that Plaintiff's bad faith claim fails because it is contradicted by

25 the express terms of the Asset Purchase Agreement.  According to Defendant, the "subject

26 sales were entirely contemplated by the express terms of the APA and therefore consistent

27 with the bargain it made with [Defendant]."  (Mot. at 22).  If so, then the implied covenant

28 of good faith and fair dealing could not have been breached.

-9-

According to California law, the implied covenant of good faith and fair dealing requires "that neither party do anything which will deprive the other of the benefits of the agreement." *Gibson v. Gov't Employees Ins. Co.*, 208 Cal. Rptr. 511, 515 (1984). To plead a breach of the implied covenant of good faith and fair dealing, a party must allege that: "(1) the parties entered into a contract; (2) the plaintiff fulfilled his obligations under the contract; (3) any conditions precedent to the defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct." *Barrett v. Apple Inc.*, 523 F. Supp. 3d 1132, 1158 (N.D. Cal. 2021). A plaintiff's breach allegations must go "beyond the statement of a mere contract breach." *Bionghi v. Metro. Water Dist.*, 70 Cal. App. 4th 1358, 1730, 83 Cal. Rptr. 2d 388 (1999).

Here, Plaintiff has alleged that an express contract existed with Defendant and, in executing the contract, Defendant deprived Plaintiff of the benefit "of the contract by falsely reporting sales to create the illusion that [Defendant] was entitled to the Total Revenue Payment." (ECF No. 33 at 17). According to Plaintiff, "[r]easonable parties would not foresee that a business partner may plot to place expired food into the stream of commerce and draft a specific clause to prohibit such action." *Id.*

The Court here reiterates its above holding, namely, that Plaintiff has failed to detail how this alleged fraud occurred, the particular circumstances constituting the fraud on a particular occasion, as well as when the fraud occurred. Without this information in the pleadings, the Court cannot fairly analyze whether the defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract.

## IV. CONCLUSION

For the above reasons, the Court GRANTS Defendant's Motion with leave to amend.

//
//
//
//

Plaintiff may file an amended complaint consistent with this Order within twenty-one (21) calendar days of the date of this order.

**IT IS SO ORDERED.**

DATED:    December 27, 2023



HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE

-11-